IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ROBIN ANTONICK                          )
and SUSAN ANTONICK,                      )
                                         )
                Plaintiffs,              )     TC-MD 230454R
                                         )
        v.                               )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
                Defendant.               )     **DECISION**

Plaintiffs appealed Defendant's Notice of Assessment, dated August 29, 2023, for the

2019 tax year. A trial was held remotely on May 13, 2024. Robin Antonick (Antonick)

appeared and testified on behalf of Plaintiffs. Nelly Rudnitskaya, auditor for the Department of

Revenue, appeared on behalf of Defendant. Plaintiffs' Exhibits 1 to 15 and Defendant's Exhibits

A to I were received into evidence without objection.

## I.  STATEMENT OF FACTS

Antonick creates and manages online advertising campaigns for auto dealerships under

the company name 24x, Inc.[1] Antonick testified that he paid Google, Inc. and Craigslist, Inc.

directly for advertising space as part of the services offered to his clients during the 2019 and

2020 tax years. Antonick further explained that he would first create and manage advertisements

through Google, including setting a monthly budget (described as a monthly "spend") for each

advertisement that would run the following month. Antonick billed clients, which included an

amount earmarked for the advertising space, and subsequently paid Google after the

---

[1] Plaintiffs filed a Schedule C but appear to operate the company as a corporation. (*See* Def's Ex I at 8. (letterhead on invoice indicating the "24x, Inc." name.)) However, the form used is not at issue in this appeal.

DECISION  TC-MD 230454R                                                                 1

advertisements would run. At the end of the year, Plaintiffs reported the cost of paying for the clients' advertising space as cost of goods sold (COGS) totaling $88,770. Antonick explained that this total included January 2020 expenses because Plaintiffs use the accrual-based method of accounting which allows them to match income with expenses even if they occurred in different calendar years.

Antonick testified that he maintained two separate home offices during 2019. The first home office was part of a 1,024 square foot apartment (Prescott Apartment) that Plaintiffs rented until mid-April 2019 for $2,063 per month. The second home office is part of an 1,828 square foot property (Nevada Ct. House) Plaintiffs purchased and moved into in mid-April 2019. Plaintiffs deducted $15,300 for expenses related to these home offices.

For the Prescot Apartment, Plaintiffs provided a floorplan showing a total of 1,024 square feet. Plaintiffs deducted a percentage of the apartment based on what Antonick testified was exclusive business use as follows: "A OFFICE" (178 square feet), "B HALLWAY & STORAGE" (107 square feet), and "C OFFICE" (103 square feet). Antonick testified that the hallway closet took up about half of the hallway and was only used to store business materials, however, he also noted this is the main entryway into the apartment which was not exclusively used for business.

In addition to the floor plan, Plaintiffs provided a breakdown of the payments made for rental charges, storage unit, and utilities. Plaintiffs paid $8,252 for rent and $426 for the storage units. Antonick further explained that the storage units were used to store business equipment. Additionally, Antonick testified that the utilities included high speed internet and television which totaled $1,323.02; water; and electricity which totaled $289.02.[2] Antonick specifically

noted that $120 per month was attributable to the cost of internet.

For Nevada Ct. House, Plaintiffs provided an ariel picture of the property and a breakdown of the square footage of each area included in his home office calculation. The ariel photo indicates the property is approximately 1,828 square feet. Plaintiffs deducted as exclusive business use what is labeled "A" (399 square feet), and outbuildings "B" and "C" (120 square feet each) based off the percentage of business use method. In the same exhibit, Plaintiffs provided pictures of "A" which display his desk, equipment, storage cabinets, some personal family photos, and a speaker. (*Id.*) Antonick testified that the outbuildings were used to store office equipment. In addition, Plaintiffs provided documents that listed the expenses they incurred in the 2019 tax year including acquisition costs; utilities; mortgage payments, interest, insurance, and mortgage insurance payment. Plaintiffs paid $18,804.31 in mortgage payments, $10,296.38 and $1,216.39 of which was interest payments and mortgage insurance premium respectively. Furthermore, Plaintiffs paid $504.96 for electricity, $863.80 for water, and between $19.99 and $66.03 per month for internet service.

## II. ANALYSIS

While Defendant's assessment contains multiple adjustments, this appeal is focused on whether Defendant improperly changed taxpayer's accounting method from accrual to cash and whether it erroneously denied Plaintiffs' home office deductions.

In analyzing Oregon income tax cases, the court starts with several guiding principles. First, the federal Internal Revenue Code (IRC) applies because the ORS defines taxable income by reference to the IRC. *See* ORS 316.022(6); 316.048.[3] Second, the party seeking affirmative

---

[2] For water, Antonick testified that the water company could not provide bills dating back three years so he could not show the payments. Accordingly, the court cannot include the payments.

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2017 edition.

relief bears the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427. A preponderance of the evidence is shown when "the facts asserted are more probably true than false[.]" *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958). However, "if the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Third, deductions are a "matter of legislative grace[,]" and the burden of proof is on the individual claiming the deduction (i.e. taxpayer must substantiate the deduction). *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Fourth, IRC section 162 generally allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC § 162(a). However, a taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. *See* IRC § 6001; Treas Reg § 1.6001–1(a).

A.     *COGS*

Plaintiffs asserted at trial that the business's Google and Craigslist advertisements were not advertising expenses, as Defendant characterizes them, because they were not to promote Plaintiffs' services. Rather, Plaintiffs asserted that these expenses should be categorized as COGS. This is just an academic issue with little impact to the deductibility of the expenses. In general, COGS includes various costs associated with the production and preparation of goods for sale such as the cost of raw material. "Businesses that provide services do not generally subtract expenses for COGS, unless the business also sells or charges for materials and supplies used in its business." *Chapman v. Dept. of Rev.*, TC-MD 150018N, 2015 WL 5703168, at *8

(Or Tax M Div, Sept 29, 2015) (citing IRS Publication 334, chapter 6 (Jan 20, 2011)).[4] Plaintiffs provided no explanation about how these payments qualified as COGS expenses. Except for the expenses incurred in 2020 which are discussed below, the court finds that Defendant's moving of COGS to the advertising expense category was proper.

B.    *Expenses Incurred in January 2020*

Plaintiffs assert that Defendant did not follow its accrual-based accounting method when Defendant detached expenses paid in January 2020 from income generated in December 2019. (Compl at 5.) Plaintiffs cite to IRS Publication 538, which provides that "[t]he purpose of an accrual method of accounting is to match income and expenses in the correct year." IRS Pub 538 at 10 (2022). As evidence, Plaintiffs provided an invoice that was sent to a client for work performed in December for advertisements that would be paid for in January. The invoice included a breakdown of the amounts that would be spent on January advertisements. Antonick testified that Exhibit 1 is representative of the invoices that would be sent monthly to a client for a marketing campaign, but this was not his only client nor campaign. In addition, Plaintiffs provided screenshots of the client's Google account showing cost metrics and payments made that they assert correlate to the invoice provided in Exhibit 1.

Defendant asserts that Plaintiffs did not provide sufficient evidence to establish that the expenses paid to Google and Craigslist in January 2020 matched income earned in December 2019. As evidence, Defendant provided communications between the parties during the audit which includes screenshots of Plaintiffs' client's Google account, invoice to client, Google billing activity, summary of Google payments, and bank statement analysis provided.

_____

[4] "Administrative guidance set forth in an informal IRS publication is not an authoritative source of Federal tax law and does not bind the Government." *Dorsey v. Comm'r*, 91 TCM (CCH) 907, WL 728345 at *1 (2006). The court only cites to Publication 334 as a means to describe when a service business might deduct COGS generally. *Id.*

In general, taxable income is computed by using the accounting method regularly used by the taxpayer in keeping their books. IRC § 446(a). As noted above, Plaintiffs follow the accrual-based method of accounting. Under the accrual method, items are included in gross income generally "when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas Reg § 1.451-1(a). Similarly, expenses are generally deducted when "all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Treas Reg § 1.461-1(a)(2). The purpose of this method "is to match income and expenses in the correct year." IRS Pub 538 at 10 (2019). While a taxpayer is generally free to choose what accounting method is used, they are still required to maintain sufficient records to substantiate the amount of the deductions. *See* IRC § 6001; Treas Reg § 1.6001–1(a).

There is no doubt that Plaintiffs paid for the advertisements, but the evidence provided is insufficient to correlate the January 2020 expenses to the income generated in December 2019. As indicated by Antonick's testimony, the invoice provided is only a representation of the invoices Plaintiffs send to clients monthly, not the actual expenses relative to the advertisements at issue. Furthermore, the summary of costs and charges to Plaintiffs' credit card do not indicate when the income was earned—only that payments were made. Additionally, the court does not agree that Defendant changed the method of accounting when it denied Plaintiffs' January 2020 expense deductions. Rather, the court understands that Defendant simply could not match the income and expenses together as is required under the accrual method of accounting. Plaintiffs have failed to meet their burden of proof that their expenses paid in 2020 should be allowed under the accrual method of account to be deducted on their 2019 return.

/ / /

C.    *Home Offices*

In general, the IRC prohibits any deduction "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." IRC § 280A. However, there are several exceptions, including when "a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer[.]" IRC § 280A(c)(1)(A). The regulation explains:

> "[f]or purposes of subparagraph (A), the term 'principal place of business' includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."

IRC § 280A(c)(1).

As previously noted, a taxpayer has the burden of proof when claiming a deduction. *INDOPCO, Inc.*, 503 U.S. at 84. The taxpayer substantiates their deduction by providing "adequate records" or "sufficient evidence" corroborating taxpayer's statement that the expense is "ordinary and necessary * * * in carrying out [his] trade or business." IRC § 162.

Starting with the Prescot Apartment, "A OFFICE" (178 square feet) may be used to compute the home office deduction. The testimony, floor plan, and records of payments provided by Plaintiffs are sufficient to establish the exclusive business use. The court finds Antonick's testimony for this matter to be credible. The floor plan corroborates his testimony because it indicates the area is closed off from the rest of the apartment. However, "B HALLWAY & STORAGE" and "C OFFICE" cannot be used in the computation of the deduction because, as gathered from Antonick's testimony, these areas were not exclusively used for business purposes. Further, not all expenses may be included in the computation. Internet and TV expenses may not be deducted because the evidence provided does not provide a clear

allocation between business and personal use. Additionally, the storage unit expenses may not be deducted because there was insufficient evidence, other than Antonick's testimony, to support that it was used exclusively for business purposes.

For the Nevada Ct. House, the area designated as room "A" (399 square feet) may be used to compute the home office deduction. Plaintiffs' pictures, records of payments, and breakdown of costs provide sufficient evidence to support Antonick's testimony to establish the exclusive business use. However, Outbuildings "B" and "C," cannot be used in the computation of the deduction because Antonick's testimony was insufficient to substantiate that the buildings are used exclusively for business purposes. Additionally, Plaintiffs' internet expenses, which are not allocated between personal use and business use, may not be deducted.

Therefore, the court finds that Plaintiffs are entitled to a partial deduction $5,588[5] based on the percentage of business use of each apartment excluding the internet, TV, and storage unit expenses.

### III. CONCLUSION

Upon careful consideration, the court finds that Plaintiffs failed to present sufficient evidence that the advertising costs were COGS and that the January 2020 expenses are related to income generated in 2019. Further, Plaintiffs are granted the adjustments to the home office deduction as discussed above. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are not entitled to a deduction of advertising expenses paid for in January 2020 in the 2019 taxable year.

---

[5] This was calculated by doing the following. First, for Prescott Apartment, the rent and electric bill payments were added together ($8,541.02) and then multiplied by the percentage of business use of the apartment (178 square feet divided by 1,024 square feet). Second, for Nevada Ct. House, the mortgage, electric bill, and water bill payments were added together ($20,173.08) and then multiplied by the percentage of business use of the house (399 square feet divided by 1,828 square feet). Lastly, both numbers were added together.

IT IS FURTHER DECIDED that Plaintiffs are allowed a partial deduction for their home offices in the amount of $5,888.

Dated this _____ day of August 2024.

_____

*__If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.__*

*__Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.__*

*__This Decision was signed by Magistrate Richard D. Davis and entered on August 19, 2024.__*